MONTANA STATE WELFARE BOARD of the State of Montana and the Members Thereof, JEREMY G. THANE, et al., Plaintiffs and Appellants, v. LUTHERAN SOCIAL SERVICES OF MONTANA et al., Defendants and Respondents:

No. 11863.
Decided Feb. 3, 1971.
480 P.2d 181.

Thomas H. Mahan argued, Helena, for plaintiffs and appellants.

Hughes & Bennett, George T. Bennett argued, Gough, Booth, Shanahan & Johnson, Ward A. Shanahan argued, Keller, Reynolds & Drake, Paul F. Reynolds argued, Helena, for defendants and respondents.

MR. JUSTICE JOHN C. HARRISON delivered the opinion of the court.

This is an appeal from an order of summary judgment granted by the district court of the First Judicial District, in and for the county of Lewis and Clark, in favor of the defendants, Lutheran Social Services of Montana, Catholic Charities, Incorporated, of the Diocese of Helena, and Montana Children's Home and Hospital.

The action was instituted by the Montana State Welfare Board, hereinafter referred to as the Board, and the individual members thereof in the form of a declaratory judgment action seeking to determine the legality of the Board's policy on the adoption of children of indigent unwed mothers.

Defendant Catholic Charities, Incorporated, filed a counterclaim with its answer alleging that an actual, unnamed person had been denied public assistance by the Board after she had sought counsel and advice from Catholic Charities concerning the placing for adoption of her unborn child. No specific relief was requested in the counterclaim nor was any granted by the district court.

The case was submitted to the court upon an agreed statement of facts, the deposition of W. J. Fouse, State Administrator of the Department of Public Welfare, and answers to interrogatories by Joseph H. Roe, Director of Child Welfare Services of the Department of Public Welfare.

The facts are as follows: There are in the state of Montana three private adoption agencies authorized by the state to procure the adoption and placement of minor children. They are the three above named defendants. For a period of years, both before and since the filing of this action on November 27, 1963, there has been discussion between the Board and the defendants as to whether mothers otherwise qualified to receive the cost of medical care, hospitalization and foster home care incident to the birth of an adoptive child from the Board, are entitled to such services when they have sought and received counseling and child placement from one of the three private agencies. To date the policy of the Board has been to deny assistance to such mothers, while granting assistance to mothers who place their children with the State Department of Public Welfare for adoption.

The agreed statement of facts shows there are federal funds, administered by the Board and county welfare departments, available for medical care, hospitalization and foster home care of indigent, qualified expectant mothers. At the present time it is the policy of the Board to require private agencies to pay these expenses of the mother if the adoption is to be through a private agency.

The Board has required the three private agencies as a condition of licensing, to show financial responsibility for the purpose of bearing the medical costs of mothers they are assisting by way of adoption of their children. Defendant Lutheran Social Services of Montana has refused to budget for these expenses and as a result has been granted only a "conditional" license since 1964. The regional commissioner of the United States Department of Health, Education and Welfare has instructed the Board that it may not take into consideration the fact that an otherwise qualified expectant mother may receive assistance from a private adoption agency in determining if she is to receive medical, hospitalization and foster home care. In 1968 the Board was requested by the United States Department of Health, Education and Welfare to change its present

policy. The Board does have discretion as to whether it will use federal funds for this type of assistance, however, it is apparent that the Board has been using federal funds for granting assistance to mothers who place their children in the hands of the Board for adoption, and denying it to mothers who seek assistance from private agencies for adoption purposes.

Defendant, Catholic Charities, calls attention to its counterclaim and in the agreed statement of facts to an actual case where an application for medical assistance was made by an apparently qualified expectant unwed mother receiving counseling and adoption service from Catholic Charities. The Board denied her application on August 2, 1967, upon the basis of its policy decision of February 25, 1964, which states as follows:

" 'It has been a long standing policy of this Board that where an individual is receiving services through a child placing agency licensed by this department, that agency is responsible for the costs of all services involved including medical care and hospitalization. In determining the eligibility of an individual for assistance from this department, all resources must be considered. It therefore follows that the licensed child placing agency is considered a resource.' "

Previously, the Board had denied two other such requests, since the institution of the program for assistance to expectant mothers.

Montana state law provides that private adoption agencies must be licensed by the State Department of Public Welfare in order to do business. According to the statute and the record, the primary business of the three agencies is the care and placement of minor children. To obtain the necessary license the three adoption agencies must conform to the provisions of section 10-703, R.C.M.1947.

The policy of the Department of Public Welfare as set forth in its administrative regulations requires all private agencies to show proof of financial responsibility for the care of expectant mothers. This policy is included in the department's Licensing Standards for Licensed Voluntary Agencies, promulgated by

the Department of Public Welfare in February 1964, as a part of its child welfare manual. Paragraph 2668 of such manual provides:

"2668—Boarding Homes used by Licensed Child Placing Agencies.

Every child-placing agency shall obtain from the Department a license for each boarding home used by the agency, and will be responsible for arranging for the renewal of such annual licenses within thirty days prior to the expiration of such license for boarding care. The minimum standards and regulations for boarding foster homes prescribed by the Department shall be applicable to all boarding homes.

A boarding home is defined as a private family who gives care and maintenance to a child, or children not related to them by blood, who is not a ward, and for which care and maintenance they receive money or other consideration of value.

2668A—Financial Responsibility of the Licensed Voluntary Agency.

The agency to be licensed will clearly define all specific functions it proposes to perform. The current budget of the agency will reflect there are sufficient funds to pay the costs associated with the defined functions. More specifically, this standard requires that when an application is accepted by a child placing agency for services, that agency will be responsible for all costs in connection with the approved application; *more specifically—with regard to care of the unmarried mother accepted for service—the financial responsibility will include paying the costs of medical care, hospitalization, shelter care, and other costs associated with the current pregnancy including the care of the child.*

Approved applicants who have other children, if otherwise eligible, could receive Aid to Dependent Children payments for these children.

Each licensed agency is required by the legal provisions of the Legislature and the standards of the State Department of Public Welfare to have a sound financial plan to pay the costs

of the services it renders. The basis for the legal provisions and for the standards for the department is outlined in the Social Security Act which provides that the department is required to consider all income and resources in determining eligibility for services from the department. Since a voluntary child placing agency must assure the licensing agency, through its budget, that it will have the sufficient finances to pay for the services it renders, it necessarily follows that the voluntary child placing agency is a resource to the person who applies for services and is accepted." (Emphasis provided).

Two basic issues are determinative of this appeal:

1. Can the Montana State Welfare Board legally deprive an indigent expectant mother of public assistance in the form of medical, hospitalization and foster home expenses, if she applies to a private adoption agency for counseling and adoptive services?

2. If the Board did grant such assistance upon application by qualified expectant mothers, would such payments be in violation of Art. V, Sec. 35; Art. XI, Sec. 8; or Art. XIII, Sec. 1 of the Montana Constitution?

This is a case of first impression in Montana. We find no case authority in this state pertinent or comparable to the two questions above stated.

First, the state legislature has indicated its intent concerning the regulation and functions of adoption agencies in section 10-703, R.C.M.1947. That statute states the State Department of Public Welfare has the power to issue licenses to agencies procuring the adoption of minor children; to prescribe the conditions upon which the licenses shall be granted; and to make such rules and regulations as are "consistent with the welfare of such minor children". Subsection (1) of section 10-703 clearly states "The chief function of the agency must be the care and placement of minor children."

The statute also places emphasis on the need for qualified personnel to manage the agency and perform specialized social studies of the child and proposed adoptive parents. It provides

that the agency must submit annually a financial report, containing a full accounting of its operations during the preceding year, in order to meet the statutory requirement that it be financially responsible for its operations. Subsections (2) and (8), section 10-703, R.C.M.1947.

The entire emphasis of the statute is upon the welfare of the child Nowhere in the statute is there consideration given to the medical and hospital costs or to other expenses of care or counseling of the expectant mother, nor the costs of the birth of the child. The Board has contended throughout the years that one of the functions of a private adoptive agency is to provide the expenses incident to caring for and counseling the expectant mother and the birth of the child and it must show that it is financially able to do so.

In our interpretation of section 10-703, R.C.M.1947, we look to section 93-401-15, R.C.M.1947, which provides:

"Construction of statutes and instruments—general rule. In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

We find nothing in section 10-703, R.C.M.1947, to indicate that the legislature intended private adoption agencies be required to show consideration to the medical, hospital or foster home expenses of an expectant mother or to show proof of their financial ability to pay such expenses, as a condition to obtaining a license to operate from the State Department of Welfare. To the contrary, we find the only duty of the agencies, as to matter of law, is the statutory duty to the child and the adoptive parents The license is required by the legislature only to protect and benefit the child to be placed for adoption and to insure that agencies are adequately financed to perform their functions by extending to the child all the benefits of the adoption laws of the state through legal process, with the help of trained

qualified personnel. Adoption agencies begin to fulfill their statutory duty when legal custody has been lodged in the agency, after the birth of the child.

Section 10-703, R.C.M.1947, does not require private adoption agencies to prove financial ability to pay the medical, hospitaliztation, and foster home care expense of an expectant mother who has come to them for adoptive services, nor to actually pay such expenses.

We find Paragraph 2668 of the Licensing Standards for Licensed Voluntary Agencies, a part of the child welfare manual of the Board, to be beyond the scope and intent of section 10-703, R.C.M.1947, and an unwarranted extension of the authority given to the Department of Public Welfare.

Because we have found the present regulation of the Board to be beyond the scope of section 10-703, we further hold that the policy of the Board promulgated February 25, 1964, denying medical assistance to an indigent, otherwise qualified applicant because such applicant is receiving services of a private adoption agency, is likewise beyond the authority of the Board and is therefore void.

Consequently, an otherwise qualified expectant mother does not relinquish her right to public assistance by virtue of the fact that she has applied for or is receiving services to have her child placed for adoption through a private adoption agency. Neither is she disqualified in any manner from receiving public assistance or welfare, otherwise available under applicable state or federal law, by applying to or seeking from a private source any aid, comfort, advice, counseling or help of any nature prior to the birth of her child.

Second, the Board argues that payment of such assistance would be an "appropriation" of funds in violation of Art V, Sec. 35; Art. XI, Sec. 8; or a "loan, donation or grant" in violation of Art. XIII, Sec. 1, of the Montana Constitution. We do not agree.

The position of the Board is that if an indigent expectant mother chooses one of the three private adoption agencies for as-

sistance, then that agency must provide all the care she requires incident to the birth of the baby and adoption. The Board argues that a private agency paying the expenses receives the benefit of receiving the child to be placed for adoption and a fee from the adopting family for the adoption service. It further argues that if the Board paid the expenses of the mother it would be making payments in violation of the above constitutional provisions due to the fact that the private agency would indirectly receive the benefit of such payments and collect the adoption fee from the adopting family.

However, the Board is willing to pay all medical, hospitalization and foster home care expenses of those indigent expectant mothers who are willing to relinquish their children to the State Department of Welfare for adoption. Thus, the woman giving up her child to a private agency is penalized by the Board because she chooses the private over the public agency.

We find no distinction between the woman who needs and requests assistance from a private agency or a public agency.

Art. V, Sec. 35, of the Montana Constitution provides:

"No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state, nor to any denomination or sectarian institution or association."

Art. XI, Sec. 8, of the Montana Constitution provides:

"Neither the legislative assembly, nor any county, city, town, or school district, or other public corporations, shall ever make directly or indirectly, any appropriation, or pay from any public fund or moneys whatever, or make any grant of lands or other property in aid of any church, or for any sectarian purpose, or to aid in support of any school, academy, seminary, college, university, or other literary, scientific institution, controlled in whole or in part by any church, sect or denomination whatever."

Art. XIII, Sec. 1 of the Montana Constitution provides:

"Neither the state, nor any county, city, town, municipality, nor other subdivision of the state shall ever give or loan its

credit in aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or a joint owner with any person, company or corporation, except as to such ownership as may accrue to the state by operation or provision of law."

Payment of public assistance, pursuant to a current State Board of Welfare assistance program, from federal funds is not an "appropriation" to any person for the purposes listed above. The record is clear that not one of the private adoption agencies has ever applied for or received public assistance for the purposes which are outlined in this case. It is the indigent unwed mother who has the right to the funds and it is on her behalf that the funds should be paid to those persons extending to her medical, hospitalization and foster home care. An "appropriation" cannot be created by the purely incidental result that the adoption agencies would not have to pay the bills of the indigent expectant mothers.

The primary effect of such payments to such a woman is the accomplishment of a public purpose, as described in the public policy of the State Welfare Board in maintaining an assistance program for such women, funded with federal funds from the Children's Bureau. The long standing program of the Board has been to provide assistance to indigent expectant mothers of this state, whether they relinquish their children for adoption or not. To deny this assistance to those seeking additional assistance from private adoption agencies would be a denial of the equal protection of our laws in violation of the 14th Amendment to the United States Constitution. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600.

We hold that payment of public assistance to indigent expectant mothers is not an unconstitutional "appropriation", "loan", "donation", or "grant" in violation of the Montana Constitution, simply because such persons may request the counseling and assistance of private adoption agencies. In no

way do we find that private adoption agencies are directly or indirectly benefited by payments to or on behalf of a qualified recipient, nor have they ever received such funds.

It was argued by the Board that the recent case of State ex rel. Chambers v. School District No. 10, 155 Mont. 422, 472 P.2d 1013, is controlling. In that case it was ruled that a levy of or payment of funds by a public school board for the employment of teachers to teach in a private school is in violation of the Montana constitutional prohibitions cited heretofore. We find no similarity in the two cases.

There was before the district court a counterclaim on behalf of an unnamed claimant, who requested public assistance in 1964 and was denied by the Board in 1967. This counterclaim was not argued in either the district court or this Court and is now moot. The counterclaim was made a part of the instant case by defendants as an example of a claim having actually been denied by the Board. We do not have jurisdiction of the counterclaim, however, we do hold this decision shall be prospective in application only.

The judgment of the district court is affirmed.

MR. JUSTICES HASWELL, DALY and CASTLES concur.